WILLENE BRIGGS and      *     CIVIL ACTION NO: 2:12-cv-02145
KIM BRUMFIELD            *
                            *     EASTERN DIST OF LOUISIANA
v.                        *     UNITED STATES DIST COURT
                            *
DEPUTY WILLIAM PHEBUS and     *     JUDGE KARL J. BARBIER
SHERIFF EDWARD DANIEL      *     MAGISTRATE JUDGE
                            *     KAREN WELLS ROBY

\* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \* \*

## SECOND AMENDED COMPLAINT FOR DAMAGES

NOW INTO COURT, through undersigned counsel, comes Ms. Willene Briggs and Ms. Kim Brumfield, who pursuant to leave granted files this *Second Amended Complaint for Damages* to add additional party Plaintiffs, Mr. Allen Briggs, the brother, and Ms. Kendra Pendleton, a sister, and party Defendant, Columbia Casualty Company, as follows:

1.

### Jurisdiction

The jurisdiction of this Honorable Court is invoked Pursuant to 28 USC § 1331 "Federal Question" accordingly Plaintiffs specifically seek relief pursuant to 28 USC § 1983 and the Constitution of the United States for injuries, damages and other losses as well as supplemental jurisdiction pursuant to 28 USC § 1367 over all state law claims.

2.

### Venue

Venue is proper pursuant to 28 USC § 1391 (b)(1)(2) in that the defendant, resides in Tangipahoa Parish and a substantial part of the events or omissions giving rise to the claims herein occurred in this judicial district.

3.

### Parties

**PLAINTIFF**:

**WILLENE BRIGGS**, a resident of the full age of majority living in Kentwood, Parish of Tangipahoa, State of Louisiana and the mother of the deceased Cjavar "Dee Jay"

Galmon.

**KIM BRUMFIELD**, a resident of the full age of majority living in Kentwood, Louisiana, Parish of Tangipahoa, State of Louisiana, and the sister of Cjavar "Dee Jay" Galmon.

**ALLEN BRIGGS, JR.**, a resident of the full age of majority living in Kentwood, Louisiana, Parish of Tangipahoa, State of Louisiana, and the brother of Cjavar "Dee Jay" Galmon.

**KENDRA PENDLETON**, a resident of the full age of majority living in Kentwood, Louisiana, Parish of Tangipahoa, State of Louisiana, and the sister of Cjavar "Dee Jay" Galmon.

4.

## DEFENDANTS

**DEPUTY WILLIAM PHEBUS**, a resident of the full age of majority domiciled in the Parish of Tangipahoa, State of Louisiana, who was acting under color of state law when he shot Mr. Galmon.

**SHERIFF DANIEL EDWARDS** is the employer of Deputy Phebus and as such he is liable for any negligent acts committed by Deputy Phebus that caused injury.

OFFICER IN CHARGE and/or SUPERVISOR on scene to be determined through discovery.

5.

## DIRECT ACTIONS

Plaintiffs bring direct actions against the following insurer(s), pursuant to La. R.S. 22:655, *et seq*., which allows a direct action within the terms and limits of the respective policies, which liability policies are for the benefit of all injured persons and their survivors or heirs to whom the insureds are liable, making the insurers liable *in solido* to the plaintiff class. In reasonable reliance on the results of Plaintiffs' investigation, the following are

2

named as additional defendant(s), as the insurer(s) of **DEPUTY WILLIAM PHEBUS** and

**SHERIFF DANIEL EDWARDS** for damages to the Plaintiffs as set forth in the *Complaint*,

as amended:

**COLUMBIA CASUALTY COMPANY**, a foreign insurance company domiciled in Illinois authorized to do and doing business in this state and amenable to service of process through the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, Louisiana 70809.

Columbia Casualty Company issued for the benefit of defendant Deputy William Phebus a liability insurance policy number 223458075 entitled "Law Enforcement Liability Coverage" effective 09/01/2011 through 09/01/2012 and/or during the relevant time period which provided liability coverage applicable to the actions brought by plaintiffs. Such policy(s) was in full force and effect during the time periods described in the *Complaint*, as amended and supplemented and affords coverage for the acts described therein.

**COLUMBIA CASUALTY COMPANY**, a foreign insurance company domiciled in Illinois authorized to do and doing business in this state and amenable to service of process through the Louisiana Secretary of State, 8585 Archives Ave., Baton Rouge, Louisiana 70809.

Columbia Casualty Company issued for the benefit of and to defendant Sheriff Daniel Edwards a liability insurance policy number 223458075 entitled "Law Enforcement Liability Coverage" effective 09/01/2011 through 09/01/2012 and/or during the relevant time period which provided liability coverage applicable to the actions brought by plaintiffs. Such policy(s) was in full force and effect during the time periods described in the *Complaint*, as amended and supplemented and affords coverage for the acts described therein.

6.

## CAPACITY

The deceased Cjavar "Dee Jay" Galmon never married and/or he has no children.

The decedent left no spouse or child surviving.

7.

GENERAL ALLEGATIONS

On August 11, 2012, Cjavar "Dee Jay" Galmon was eighteen years old.

8.

On August 11, 2012, two friends asked a reluctant "Dee Jay" to accompany them

to a Club 31 in the village of Tangipahoa.

3

9.

On August 11, 2012, Deputy William Phebus was in uniform and employed by the Tangipahoa Sheriff's Office.

10.

Deptuy Phebus had previously worked for other law enforcement agencies.

11.

In the alternative, persons in a supervisory position to Phebus were aware of complaints or problems Phebus had in the past and his suitability to carry a weapon was lacking.

12.

Deputy Phebus was not suitable for working in or around crowds, which fact was known to superiors.

13.

On August 11, 2012, a young black man ran from the inside of the club to the out-of-doors during which his pants fell causing him to fall and at which time he was apprehended and seized by police.

14.

Police had the man on the ground and under control while another apprehendee was in custody in the back seat of a police car.

15.

There were no exigent circumstances which necessitated the use of a deadly weapon or deadly force.

16.

Dee Jay walked up to the police with his hands in the air and in front on numerous witnesses made a statement to the effect, "That's not the one. Hey sir, he's not the one."

17.

Dee Jay was unarmed with both of his hands in full view.

18.

There were numerous witnesses.

19.

Deputy Phebus pulled his gun, pointed at Dee Jay, and fired directly at Dee Jay in the heard area from close range.

20.

Deputy Phebus is a marksman, who is knowledgeable of guns and he was familiar with the gun he fired.

21.

Deputy Phebus had handled the gun he shot on numerous occasions before the shooting of Mr. "Dee Jay" Galmon.

22.

Deputy Phebus fired the gun with the purpose and intent of causing serious bodily injury to Mr. Galmon.

23.

Dee Jay fell backward to the ground with his hands still raised above his head.

24.

Dee Jay lay shaking and quivering on the ground suffering in pain.

25.

A nurse and other persons in the crowd sought to perform CPR, but were denied any access to Dee Jay who lay dying.

26.

Deputy Phebus is trained in emergency medical treatment, but did nothing.

27.

Not one officer on the scene attempted any life saving effort and no emergency vehicle or ambulance was summonsed by deputies and they prevented others from rendering any medical assistance whatsoever.

28.

In the alternative, emergency medical personnel that arrived on the scene were not allowed to fully assess Dee Jay who lay dying due to interference and obstruction by Defendants or other persons whose identities are not known at this time.

29.

Currently, the identity of the Officer in Charge is unknown.

30.

Ms. Briggs, who is well known in the community and Dee Jay's mother was immediately called and she appeared on the scene shortly thereafter to witness her son dying on the ground.

31.

Ms. Briggs attempted, but she was not allowed to comfort her son.

32.

Ms. Brumfield was also called to the scene shortly after the shooting.  She also arrived shortly thereafter to witness her brother dying on the ground.

33.

Ms. Brumfield attempted, but she was not allowed to comfort her baby brother.

34.

Both women have suffered physical pain and suffering upon witnessing the event of the death of Dee Jay.

35.

Neither was allowed any access to Dee Jay and the crowd was chanting that it was

6

wrong to deny Dee Jay medical or life saving assistance.

36.

The OIC called dogs to the scene and no one was allowed to go to Dee Jay and offer him comfort him at the time of death.

37.

Mr. Allen Briggs, the brother, and Ms. Kendra Pendleton, a sister, also arrived to witness their brother dying on the ground.  Although both family members tried to go to Dee Jay to offer him comfort and to determine his condition, they were denied access, which resulted in them waiting and watching as he died slowly over several hours.

38.

All deputies on the scene were extreme disrespectful of the family.  A dog was offered water when water was requested for Ms. Briggs.

39.

The crowd would not disburse and insisted that the shooting was wrongful and insisted upon providing a statement.

40.

A nurse on scene begged to assist, but was denied.

41.

Dee Jay lay on the ground until the around 7 a.m.

42.

No action has been taken to bring Deputy Phebus to justice.

43.

Dee Jay was denied medical assistance and a chance to live.

44.

The Tangipahoa Parish Sheriff's Office has an official policy regarding the police use of deadly force.

7

45.

Deputy Phebus failed to follow the official policy of the Tangipahoa Parish Sheriff's Office regarding the use of deadly force.

46.

In the alternative, Deputy Phebus followed an ineffective policy.

47.

Whether there was a policy and practice in place at the Tangipahoa Parish Sheriff's Office pertaining to the use of force, which policy was violated and which caused or contributed to the injuries, is unknown at this time.

48.

In the alternative, it was unreasonable to implement, post and follow an ineffective policy and/or fail to follow an effective policy.

49.

It was not objectively reasonable to use force on an unarmed citizen, who was not refusing any order and not resisting and trying to offer information to assist the police.

50.

It was not objectively reasonable to use force on a citizen whose hands were in plain view and who was not armed and who did not appear to be armed.

51.

Defendant acted in a manner that was in wanton or reckless disregard or with malice or willfulness to cause injury and violate constitutional rights.

52.

Deputy Phebus was **inadequately trained**; he exceeded the limitations on the use of deadly force; the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal. The inadequate training demonstrates a deliberate indifference on the part of the employer towards persons with

8

whom the police officers come into contact, and there is a direct causal link between the constitutional deprivation and the inadequate training.

53.

Deputy Phebus was **inadequately supervised**; he exceeded the limitations on the use of deadly force; the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal.  The inadequate supervision demonstrates a deliberate indifference on the part of the employer towards persons with whom the police officers come into contact, and there is a direct causal link between the constitutional deprivation and the inadequate supervision.

54.

**Deputy Phebus was negligently hired** in that Deputy Phebus did not have the temperament, training and background to proper aid or assist in a crowd situation, which violated the Plaintiffs' constitutional rights; he exceeded the limitations on the use of deadly force; the use of force arose under circumstances that constitute a usual and recurring situation with which police officers must deal.  The negligent hiring demonstrates a deliberate indifference on the part of the employer towards persons with whom the police officers come into contact, and there is a direct causal link between the constitutional deprivation and the negligent hiring.

55.

There were other complaints of excessive force by others regarding Deputy Phebus of which the employer and supervisor knew or should have known and which should have placed the employer on notice of Deputy Phebus propensity to use excessive force.

56.

The employer and supervisor should have concluded that Deputy Phebus's use of excessive force and failure to follow procedure would be plainly obvious consequences of the hiring decision.

9

57.

The actions/inactions of the Defendant has caused the Plaintiffs severe emotional distress, mental anguish, severe and permanent humiliation, embarrassment, loss of enjoyment of life, past, present, and future medical expenses, together with such other damages as will be more fully shown at trial of this matter.

58.

Prior to the shooting, Deputy Phebus displayed a pattern of use of excessive force and disrespect for the public.

59.

The following claims for relief are pled collectively and in the alternative.

60.

**FIRST CLAIM FOR RELIEF**

**SECTION 1983 VIOLATION OF CIVIL RIGHTS**

Plaintiffs seek relief pursuant to 42 U.S.C. § 1983.

61.

**UNNECESSARY AND EXCESSIVE FORCE**

Under the color of State and local law, Deputy Phebus violated Mr. Galmon's right to be free from unreasonable search and seizures and use of unnecessary and/or excessive force in that use of deadly force to apprehend or stop an unarmed citizen where exigent circumstances do not lie violates the Fourth Amendment to the United States Constitution.

62.

**DENIAL OF MEDICAL TREATMENT**

Defendant violated Mr. Galmon's 4th Amendment right as a detainee to be free from cruel and unusual punishment pursuant to 42 USC § 1983. By refusing medical treatment and/or to provide adequate treatment and access to medical facilities, Defendant(s)

exceeded constitutional limitations that arose under circumstances that constitute an usual and recurring situation with which a police officer must deal.  Failure and lengthy delays in medical treatment demonstrates a deliberate indifference on the part of the officer toward a detainee and there is a direct causal link between the constitutional deprivation and the suffering of Dee Jay and the Plaintiffs herein.

63.

**WRONGFUL DEATH**

Defendant is liable to Plaintiff, Ms. Briggs, pursuant to La. C.C. 2315.1 through 42 USC § 1983.

Ms. Briggs, who is the surviving mother of the deceased, Cjavar "Dee Jay " Galmon, seeks to recover for the damages which she sustained as a result of the death of her son due to the fault of Defendant in that she had a very close, loving and supportive relationship with her son.

64.

The deceased left no surviving wife or child.

65.

**SURVIVAL ACTION**

Defendant is liable to Plaintiff, Ms. Briggs, pursuant to La. C.C. 2315.2 through 42 USC § 1983.

Ms. Briggs seeks relief under La. C.C. art. 2315.2 of the Louisiana Civil Code, on behalf of Cjavar "Dee Jay" Galmon for the his pain and suffering occurring before and during his death occasioned by the intentional and/or grossly negligent acts and/or omissions of the Defendant herein.

66.

The deceased left no surviving wife or child.

67.

## LEJEUNE ACTION

Defendant is liable to Plaintiffs, Ms. Briggs and Ms. Brumfield, pursuant to La. C.C. 2315.6 through 42 USC § 1983.

Defendant intentionally caused severe emotional distress to Plaintiffs as a result of causing them to witness the death of Cjavar "Dee Jay" Galmon and refusing to allow any life saving measures and the rudeness in which they were treated while attempting to comfort Dee Jay in his final moments after being fatally shot and suffering and dying a brutal death.  Defendant is further liable for damages associated with the feeling of physical illness caused to the Plaintiffs upon coming upon the scene shortly after the shooting and watching the gruesome death of and seeing the body of Dee Jay as he lay dying after he was shot for no reason.

68.

Defendant is liable to Plaintiffs, Mr. Allen Briggs and Ms. Kendra Pendleton, pursuant to La. C.C. 2315.6 through 42 USC § 1983.

Defendant intentionally caused severe emotional distress to Plaintiffs as a result of causing them to witness the death of Cjavar "Dee Jay" Galmon and refusing to allow any life saving measures and the rudeness in which they were treated while attempting to comfort Dee Jay in his final moments after being fatally shot and suffering and dying a brutal death.  Defendant is further liable for damages associated with the feeling of physical illness caused to the Plaintiffs upon coming upon the scene shortly after the shooting and watching the gruesome death of and seeing the body of Dee Jay as he lay dying after he was shot for no reason.

69.

## COSTS AND ATTORNEY FEES

Plaintiffs seek relief in the form of attorney's fees and cost pursuant to 42 USC §

1988 and punitive damages pursuant to 28 USC § 1983 and the 28 USC § 2671 et seq. or any other applicable statute.

70.

## SECOND CLAIM FOR RELIEF

## NEGLIGENCE

In the alternative, the DEFENDANT knew or should have known that pulling a gun and firing it at a citizen at close range would cause damages.

71.

Plaintiff seeks relief under La. C.C. arts. 2315 and 2321 of the Louisiana Civil Code, which injuries were occasioned by the intentional and/or negligent acts and/or omissions of the Defendant(s) herein, and article 2317 and, in the alternative, for intentional infliction of emotional distress.

72.

## RESPONDEAT SUPERIOR

An employer is liable pursuant to the doctrine of *respondeat superior* for the tortious acts committed against third parties by its employees during the course and scope of employment and while under its control, direction and supervision pursuant to La. C.C. arts. 2317 and 2320.

73.

Sheriff Edward Daniel is the employer of Deputy Phebus and the OIC.

74.

## REQUEST FOR JURY TRIAL

Plaintiffs pray for a jury trial on all issues.

WHEREFORE, Plaintiffs pray that the Defendants be cited to appear and answer and that after resolution of this matter that this Honorable Court enter Judgment in favor of the Plaintiffs against the defendants with legal interest from the date of demand as

follows:

a.      Physical pain and suffering;

b.      Physical injuries;

c.      All costs associated with burial and funeral not already paid;

d.      For emotional and mental distress, pain and suffering, humiliation, embarrassment and loss of employment opportunities;

e.      Medical and pharmaceutical bills and services past, present, and future;

f.      Inconvenience;

g.      All litigation expenses;

h.      For attorneys fees and for costs as may be allowable by law;

i.      For such other relief that the Court may deem just, equitable, or proper.

Respectfully submitted:

s/ Donna Grodner
Donna U. Grodner (20840)
Marcus J. Plaisance (33316)
Blake S. Leger (32551)
GRODNER LAW FIRM
2223 Quail Run, B-1
Baton Rouge, Louisiana 70808
(225) 769-1919 FAX 769-1997
