UNITED STATES DISTRICT COURT
                    EASTERN DISTRICT OF LOUISIANA


WILLENE BRIGGS *ET AL.*                       CIVIL ACTION

VERSUS                                        NO: 12-2145

WILLIAM PHEBUS *ET AL.*                       SECTION: "J" (4)


                         **ORDER AND REASONS**

   Before the Court is Plaintiffs' **Motion in Limine (Rec. Doc. 56)**, Intervenor's Memorandum in Support (Rec. Doc. 61) and Defendants' opposition thereto (Rec. Doc. 63). Plaintiffs' motion was set for hearing on July 31, 2013, and this matter is set for trial by jury on May 5, 2014. The Court, having considered the motions and memoranda of counsel, the record, and the applicable law, finds that Plaintiffs' motion should be **GRANTED in part and DENIED in part** for the reasons set forth more fully below.

              **PROCEDURAL HISTORY AND BACKGROUND FACTS**

   This action arises out of allegations of civil rights violations under 42 U.S.C. § 1983 *et seq.*, as well as state law survival, wrongful death, emotional distress, and negligence

                                 1

claims.[1] Plaintiffs allege that their son/brother, Cjavar "Dee Jay" Galmon ("Mr. Galmon") was shot and killed by Deputy William Phebus ("Deputy Phebus") on August 11, 2012, outside of a club ("Club 41") in Tangipahoa Parish. (See generally, Compl., Rec. Doc. 1, pp. 1-6, ¶¶ 3-46) Plaintiffs contend that the shooting was unprovoked and occurred during a situation which did not necessitate the use of deadly force. (Compl., Rec. Doc. 1, p. 3, ¶¶ 13 - 17) Plaintiffs assert that after the shooting occurred, Deputy Phebus and the other officers at the scene did not render life-saving emergency care to Mr. Galmon, did not allow the medical professionals who witnessed the shooting to administer care to Mr. Galmon, and did not seek other emergency assistance for Mr. Galmon. (Compl., Rec. Doc. 1, p. 4, ¶¶ 22 - 25) Plaintiffs allege that Mr. Galmon's mother, Plaintiff Willene Briggs ("Ms. Briggs") and Mr. Galmon's sister, Plaintiff Kim Brumfield ("Ms. Brumfield"), arrived to the scene of the shooting shortly after it occurred, and that they both witnessed their son/brother suffering physical pain and dying on the ground.

---

[1] Plaintiffs incorrectly assert their state law survival, wrongful death, and emotional distress claims through 42 U.S.C. § 1983. § 1983 is only a vehicle for relief when a state actor violates a constitutional right or a federal statutory right. Therefore, while Plaintiffs were correct in bringing their excessive force and denial of medical treatment claims under § 1983, their survival, wrongful death, and emotional distress claims should be brought as state law claims along with their negligence claim which was correctly treated as a state law claim in the complaint.

(Compl., Rec. Doc. 1, pp. 4-5, ¶¶ 27 - 30) Plaintiffs report that neither Ms. Briggs nor Ms. Brumfield were allowed to render any assistance and/or comfort to Mr. Galmon. (Compl., Rec. Doc. 1, pp. 4-5, ¶¶ 27 - 30)

On August 21, 2011, Ms. Briggs and Ms. Brumfield filed the instant suit naming Sheriff Daniel Edwards ("Sheriff Edwards") and Deputy Phebus as Defendants. (Rec. Doc. 1) Following the initial complaint, Defendants filed a motion to dismiss. (Rec. Doc. 5) The Court dismissed Plaintiffs' claims without prejudice because Plaintiffs failed to affirmatively negate the existence of primary beneficiaries as is required when inferior beneficiaries assert survival and wrongful death claims. (Rec. Doc. 7). The Court granted Plaintiffs leave to amend their complaint to remedy this deficiency, and on November 26, 2012, Plaintiffs filed their First Amended Complaint. (Rec. Doc. 8). On February 20, 2013, Plaintiffs filed their Second Amended Complaint wherein they added two additional plaintiffs, Mr. Galmon's siblings, Mr. Allen Briggs ("Mr. Briggs") and Ms. Kendra Pendleton ("Ms. Pendleton"), as well as an additional Defendant, Deputy Phebus and Sheriff Edwards' liability insurer, Columbia Casualty Company ("Columbia"). In their Second Amended Complaint, Plaintiffs assert a direct action against Columbia pursuant to

Louisiana Revised Statute § 22:1269.[2]

Plaintiffs seek damages against Deputy Phebus, Sheriff Edwards, and Columbia, on Mr. Galmon's behalf as well as on their own behalves. Specifically, Ms. Briggs seeks relief on her own behalf under 42 U.S.C. § 1983 for civil rights violations and under Louisiana's wrongful death statute, Louisiana Civil Code article 2315.1, and on Mr. Galmon's behalf under Louisiana's survival action statute, Louisiana Civil Code article. 2315.2. In addition, Ms. Briggs and Ms. Brumfield seek to recover on their own behalves for the mental anguish and distress caused by viewing Mr. Galmon's suffering and death under Louisiana Civil Code article 2315.6.

On April 26, 2013, Mr. Galmon's father, Carl Galmon, moved to intervene.  Magistrate Judge Karen Wells Roby granted his motion, and Carl Galmon filed his complaint on April 30, 2013. (Rec. Doc. 28) Carl Galmon seeks damages against Deputy Phebus and Sheriff Edwards on his own behalf under 42 U.S.C. § 1983 for civil rights violations, under Louisiana's wrongful death statute, Louisiana Civil Code article 2315.1, and under Louisiana

---

[2] Plaintiffs assert an action under Louisiana Revised Statute 22:655; however, the direct action statute was renumbered as Louisiana Revised Statute § 22:1269, effective January 1, 2009. No. 415, § 1, 2008 La. Sess. Law Serv. (West).

Civil Code article 2315.6 for the mental anguish and distress caused from viewing Mr. Galmon's suffering and death at the scene of the incident. In addition, Carl Galmon seeks damages on Mr. Galmon's behalf under Louisiana's survival action statute, Louisiana Civil Code article 2315.2.

On May 22, 2013, Defendants moved for leave to file a third party complaint against Marquis Martin a/k/a Macquis Martin a/k/a Macquas Martin ("Martin"). (Rec. Doc. 36) Defendants allege that Martin is at least partially liable in this matter because Martin's actions on the evening in question allegedly led to the incident wherein Mr. Galmon was fatally wounded. Defendants allege that, on the evening that Mr. Galmon was shot outside of Club 41, there was a shooting at another nearby club ("Spur Station"). Shortly after the Spur Station shooting, there was a disturbance at Club 41 to which officers responded. When officers, including Deputy Phebus, arrived at the scene, a woman pointed out that Martin had a gun. Defendants allege that when they tried to apprehend Martin, he fled. When officers caught Martin, Defendants aver that Mr. Galmon tried to assist Martin, despite being told to stand back, and was wounded when Deputy Phebus's firearm accidentally discharged. Plaintiffs opposed the motion, and Magistrate Judge Roby held oral argument on June 26,

2013.[3] On July 9, 2013, Plaintiffs filed the instant motion in limine. (Rec. Doc. 56) Intervenor Carl Galmon filed a memorandum in support of Plaintiffs' motion on July 18, 2013. (Rec. Doc. 61) Defendants filed their opposition to the motion on July 23, 2013. (Rec. Doc. 63).[4]

## PARTIES' ARGUMENTS

Plaintiffs and Intervenor seek to exclude the following evidence: (1) any evidence or testimony concerning the criminal background and/or prior actions of Martin[5] or the Spur Station shooting, (2) any testimony or evidence concerning the grand jury proceeding regarding Deputy Phebus or the results of such proceedings, and (3) any testimony or evidence from the Louisiana State Police report(s) concerning the Club 41 incident or the Spur Station shooting that is not based on direct knowledge of the author of the report.

Plaintiffs argue that any evidence regarding Martin's actions at the Spur Station on the evening of the incident or any

---

[3] The order on this motion is currently pending.

[4] Also pending in this matter is Defendants' motion for protective order. This motion is set for hearing on the briefs by Magistrate Judge Roby on July 31, 2013. The motion is unrelated to the instant motion and deals with keeping Plaintiffs' from disseminating video depositions to the media.

[5] Plaintiffs assert that, at the oral argument concerning Defendants' motion for leave to file a third party complaint, Defendants indicated that they would introduce evidence and argue at trial that Martin's actions relate in some way to Mr. Galmon's death.

evidence of Martin's criminal background should not be admitted to suggest that the events occurring prior to the incident at Club 41 were in any way related to Deputy Phebus's shooting of Mr. Galmon. Plaintiffs urge that such evidence should be excluded under Federal Rule of Evidence 403 and Carter v. Hewitt, 617 F.2d 961, 972 (3d Cir. 1980) because it is "prejudicial and lacking in probative value." (Rec. Doc. 56-1, p. 2.)  As to the grand jury proceedings regarding Deputy Phebus, Plaintiffs rely on Fidelity and Casualty Company of New York v. Talbot, 234 F.2d 425, 428 (5th Cir. 1956) to argue that if "a no true bill is returned [after a grand jury proceeding], the evidence is inadmissible." (Rec. Doc. 56-1, p. 3.) Finally, Plaintiffs contend that the police report is largely composed of hearsay, which is not admissible under Federal Rule of Evidence 802 unless there is some exception that applies. Plaintiffs argue that there is no such exception for information contained in police reports, as noted in State v. Perkins, 97-1119 (La. App. 3 Cir. 6/17/98), 716 So. 2d 120, 127. Therefore, while Plaintiffs do not oppose any evidence that provides opinions or factual findings that would support the statements in the report, Plaintiffs maintain that the report itself is inadmissible.

    Intervenor Carl Galmon supports the assertions made by

Plaintiffs and adds to certain points in his memorandum. Carl Galmon argues that any evidence concerning Martin's background and any evidence from the Spur Station is irrelevant to the Defendants' argument that Deputy Phebus unintentionally fired his weapon at Mr. Galmon. Carl Galmon also asserts that such evidence is highly prejudicial and only serves to "tar [Mr.] Galmon with any faults they can dredge on [Martin]." (Rec. Doc. 61, p. 2) Carl Galmon further alleges that evidence of the grand jury's decision not to charge Deputy Phebus is opinion evidence and must be excluded.  Moreover, the grand jury decision is prejudicial because it is possible for a layman juror in the present case to believe that the grand jury decision carries more weight than it truly does. Additionally, Carl Galmon argues that Federal Rules of Evidence 402 and 403 both prohibit the introduction of a grand jury decision. Finally, Carl Galmon contends that the police report is inadmissible hearsay, thus must be excluded to the extent that statements within the report are not covered by an exception to the hearsay rules. Carl Galmon asserts, however, that such determinations concerning the police report would be best made at trial or during pre-trial rulings.

    Defendants argue that Plaintiffs'/Intervenor's attempt to exclude all evidence relating to Martin and the Spur Station

shooting is premature. Defendants contend that a motion in limine may be dismissed "as premature due to ongoing discovery which could altogether moot the issue of relevance." Lewis v. Royal Ins. Co. of Am., No. 02-cv-1665, 2003 WL 21219870, *2 (E.D. La. May 20, 2003) (Zainey, J.) Defendants argue that such evidence "could very well be relevant," but Martin has yet to be deposed, and it is unclear whether any evidence about Martin or the Spur Station shooting will be relevant and/or prejudicial.

Defendants contend that the Louisiana State Police report is generally admissible under the public records exception contained in Federal Rule of Evidence 803(8). Moreover, Defendants again assert that the motion is premature because (a) witness and exhibit lists are not due until February, and (b) Defendants are still engaged in discovery, and they do not know on which portions of the voluminous report they may rely at trial. Therefore, Defendants request that the motion be denied as premature or, in the alternative, deferred.

Defendants do not articulate any opposition to Plaintiffs'/Intervenor's motion in limine as it relates to the grand jury proceedings of Deputy Phebus.

## DISCUSSION

**A. Evidence and Testimony Regarding Marquis Martin and/or the Spur Station Shooting**

Plaintiffs and Intervenor both assert that including evidence and testimony regarding the prior acts of Martin and/or the Spur Station shooting should be excluded because it is irrelevant and highly prejudicial. While many of the arguments advanced by Plaintiffs/Intervenor may have merit, the Court agrees with Defendants' assertion that a ruling on this issue is premature.  Magistrate Judge Roby has not ruled on whether Martin will be added as a Defendant, and the resolution of that issue has great bearing on whether Martin's actions should be included in evidence. Moreover, it appears that, since discovery is still ongoing, and Defendants have not deposed Martin, Defendants do not even know what evidence and testimony, if any, they will introduce at trial. Therefore, because further discovery may moot this entire issue, as was the case in Lewis, Plaintiffs' motion must be denied as premature inasmuch as it relates to any evidence or testimony concerning the criminal background and/or prior actions of Martin or the Spur Station shooting. Lewis, 2003 WL 21219870 at *2. Plaintiffs are free to re-assert their arguments later in the proceedings if necessary.

**B.  Evidence and Testimony of the Grand Jury Proceeding and Results Therefrom**

Plaintiffs argue that evidence "that a grand jury returned a no true bill" against Deputy Phebus is inadmissible. Fidelity &

Cas. Co. of N.Y., 234 F.2d at 428 (referencing New York Life Ins. Co. v. Murdaugh, 94 F.2d 104, 107 (4th Cir. 1938) wherein the court held that "it is generally the well settled rule of evidence that records in criminal cases are not admissible in evidence in civil cases although both grow out of the same facts.") Defendants did not oppose this argument, and it seemingly has merit; therefore, Plaintiffs' motion in limine will be granted inasmuch as it requests the exclusion of any evidence from the grand jury proceedings regarding Deputy Phebus or the results of the proceedings.

### C. Louisiana State Police Reports

Plaintiffs rely on Perkins to argue that the Louisiana State Police report created from the investigations of the shooting at the Spur Station and of the incident at issue in this matter is inadmissible. Plaintiffs' reliance on Perkins is misplaced, however, because the Louisiana Code of Evidence provision applied in Perkins differs from the corollary provision in the Federal Rules of Evidence. Compare La. Code Evid. Ann. art. 803 and Fed. R. Evid. 803(8).  Louisiana Code of Evidence article 803 specifically prohibits from the public records exception: (1) "Investigative reports by police and other law enforcement personnel" (2) "Investigative reports prepared by or for any

11

government, public office, or public agency when offered by that or any other government, public office, or public agency in a case in which it is a party," and (3) "Factual findings resulting from investigation of a particular complaint, case, or incident, including an investigation into the facts and circumstances on which the present proceeding is based or an investigation into a similar occurrence or occurrences." La. Code Evid. Ann. art. 803.

The Federal Rules of Evidence have no such exception. Under the Federal Rules, a public record constitutes a hearsay exception when the record relates to:

> (i) the office's activities;
> (ii) a matter observed while under a legal duty to report, but not including, in a criminal case, a matter observed by law-enforcement personnel; or
> (iii) in a civil case or against the government in a criminal case, factual findings from a legally authorized investigation; and
>
> (B) neither the source of information nor other circumstances indicate a lack of trustworthiness.

Fed. R. Evid. 803(8).

In addition, the business records exception is applicable to police reports.  Fed. R. Evid. 803(6) defines a business record as:

> A record of an act, event, condition, opinion, or diagnosis if:
>
> (A) the record was made at or near the time by--or from information transmitted by--someone with knowledge;

>   (B) the record was kept in the course of a regularly conducted activity of a business, organization, occupation, or calling, whether or not for profit;
>   (C) making the record was a regular practice of that activity;
>   (D) all these conditions are shown by the testimony of the custodian or another qualified witness, or by a certification that complies with Rule 902(11) or (12) or with a statute permitting certification; and
>   (E) neither the source of information nor the method or circumstances of preparation indicate a lack of trustworthiness.

Fed. R. Evid. 803(6). This rule does not specifically prohibit the use of police reports under this exception as the Louisiana Code of Evidence does. Compare Fed. R. Evid. 803(6) and La. Code Evid. Ann. art. 803(6).

A determination of whether the police report or sections therein will be excluded is unnecessary, however, because the Court agrees with Defendants' and Intervenor's assertions that the instant motion is premature. The parties must be given time to complete discovery and determine what exhibits they will use before the Court may determine if those exhibits are admissible. Plaintiffs' motion is therefore denied as premature as it relates to the Louisiana State Police report. Bearing in mind Federal Rules of Evidence 803(6) and 803(8), discussed above, Plaintiffs are free to re-assert their arguments later in the proceeding if necessary.

Accordingly,

**IT IS ORDERED** that Plaintiffs' **Motion in Limine (Rec. Doc. 56)** is **GRANTED** only to the extent it seeks to exclude evidence arising from the grand jury proceedings of Deputy Phebus.

**IT IS FURTHER ORDERED** that Plaintiffs' **Motion in Limine** is **DENIED AS PREMATURE** in all other respects.

New Orleans, Louisiana this 7th day of August, 2013.

_____
CARL J. BARBIER
UNITED STATES DISTRICT COURT